———o———

PHILLIP B. LINVILLE, *et al.*, Appellants, *vs.* SAMUEL SAVAGE, *et al.*, Respondents.

1. *Mortgages—Parol agreement as to priority of securities—Effect of on assignees—Vendor's lien, etc.*—Certain land was sold, and notes secured by mortgage given for the purchase money which was duly recorded. The purchaser afterwards sold the same tract at an advanced price and received notes for a sum equal to the original purchase money secured by mortgage and further notes for the advance price secured by a second mortgage of same date. Then, in order to relieve himself of all responsibility on his notes given for the original purchase money, his vendor surrendered said notes and discharged the mortgage given to secure them, and accepted the notes given by the second purchaser in their place, it being agreed that they should be substituted in lieu of the notes so surrendered, and also that they should be satisfied out of the property before those given to the first purchaser for the advance price. The last named notes matured first, and suit being brought against the first purchaser by a third party, to whom they were transferred upon said notes, and to foreclose the mortgage ; *held*—1st—that the parol agreement for the substitution might be shown in evidence. It would not have the effect of modifying or changing the written instrument ; 2nd—that the holder took the notes subject to that agreement, and to the equities created thereby, whether he had notice of the same or not. The doctrine of prior equities applicable to commercial paper would not govern in such a case, the question being as to the priority of securities. 3rd.—That the original purchaser would retain his vendor's lien notwithstanding the discharge of the mortgage. The vendor in receiving a mortgage to secure the purchase money does not lose his original lien by its merger in the mortgage.

*Appeal from Shelby Circuit Court.*

*Glover & Shepley, with J. G. Blair,* for Appellants.

I. When the several debts passed into the hands of third persons, they should be paid in the order in which they respectively become due. (Mitchell vs. Ladew, 36 Mo., 526; Mason vs. Barnard, 36 Mo., 384; Thompson vs. Field, 38 Mo., 320; Ellis vs. Lamme, 42 Mo., 153; Hunk vs. Erskine, 45 Mo., 484; Matthews vs. Switzer, 46 Mo., 301.)

II. The alleged agreement between Alkire and Savage, that Martin's deed of trust should have precedence over the other was simply void. It could neither qualify, alter or modify the legal effect of the written instruments. (Jones vs. Jeffries, 17 Mo., 577; Bunce vs. Beck, 43 Mo., 266; Murdock vs. Ganahl, 47 Mo., 135; Benson vs. Harrison, 39 Mo., 303; Massman vs. Holscher, 49 Mo., 87; Inge vs. Hance, 29 Mo., 399; Barton vs. Wilkins, 1 Mo., 74; Cockville vs. Kirkpatrick, 9 Mo., 697; Deitz vs. Mound City Mut. Fire & Life Ins. Co., 38 Mo., 85.)

*Anderson & Boulware,* for Respondents.

I. The assignment of the notes cannot vest the assignees with any higher rights or stronger equity in the security than the assignor himself had. (Potter vs. McDowell, 43 Mo., 97.)

II. An agreement made at the time by a mortgagee that one of two simultaneous mortgages shall have precedence over the other is binding upon said mortgagee. (Gilman vs. Moody, 43 N. H., 243; Freeman vs. Schroeder, 43 Barb., 620; Washb. Real Pr. [3rd Ed.], p. 111, § 10.)

And parol evidence is competent to show which of two simultaneous deeds was intended to take precedence.

III. An express lien does not operate to merge the implied lien of a vendor for the purchase price of land, when it would be inequitable for such lien to be lost. (Morris vs. Pate, 31 Mo., 317.)

IV. The doctrine recognized by this court, that where a deed of trust is given to secure notes maturing at different

times the proceeds of sale are to be applied to the payment of the notes in the order of their maturity, can' have no application to this case. Here the question is one of preference between two different deeds. Moreover the two sets of notes were secured by two deeds instead of one, for the express purpose of giving precedence to one of them.

NAPTON, Judge, delivered the opinion of the court.

The petition in this case, which was filed in Oct., 1870, had for its object a judgment upon two notes given by Savage, one of the defendants, to Alkire, another defendant, and the foreclosure of a mortgage or deed of trust given by Savage to secure these notes. Martin was made a party defendant because he also held a mortgage or deed of trust on the same land, and Hatcher, the other defendant, was the trustee in both deeds.

A very elaborate and detailed statement of the facts in this case, about which there is scarcely any controversy, is contained in the finding of the court, which occupies twenty pages of the record—but for the purpose of this review of them here, it will only be necessary to give a summary history of them.

Martin, one of the defendants, owning a tract of land in Lewis County (where this suit was first brought) sold it to Alkire, another defendant, on the 1st of March, 1866, and made him a deed. The purchase money was $10,500.00, $1,000 of which was paid down and nine notes for the remainder, $9,500.00, executed by Alkire to Martin, payable yearly from the 1st of March, 1865, to 1st March 1875, with interest at 8 per cent., amounting in the aggregate to $13,460.00. To secure these notes, Alkire made a deed of trust, with Hatcher as trustee, and both deeds were duly recorded.

On the 17th May 1866, Alkire sold this same land to defendant, Savage, at an advance upon the price he agreed to pay Martin, of $3,628, and gave Savage a deed, and took from Savage nine notes exactly corresponding in dates, amounts, rate of interest, etc., with those he had given to Martin ; and to secure

their payment, Savage also executed a deed of trust, making Hatcher trustee. This deed was dated May 17, 1866, was acknowledged the 27th May, 1866, and was recorded Aug. 30th, 1866. At the same time Savage executed four other notes to Alkire, for the advance price which he had agreed to give Alkire, and made also another deed of trust to Hatcher to secure these four notes. These four notes fell due, according to their tenor, before the nine notes hereinbefore referred to.

The object of this transaction between Alkire and Savage, as the court finds, and as is indeed apparent on its face, was to relieve Alkire of further responsibility to Martin, and substitute Savage's notes for his, and Savage's deed of trust; to secure them in place of the notes and deed of trust which Alkire had previously, on the 1st March, given to Martin. The nine notes represented the original purchase money and the four notes the advance on this.

The second deed of Savage to Alkire bears the same date with the first (17 May 1866). It was acknowledged on that day and recorded Oct. 20, 1866.

This arrangement was satisfactory to Martin, who was informed of the second deed of trust to secure the four notes for the advance price; but being also informed by Alkire and Savage, that the first deed was entitled to priority and that the nine notes for the original purchase money would have to be paid before the four notes for the advance, he gave up to Alkire his nine notes, and entered a discharge of the mortgage or deed of trust to secure them on the record. This was done on the 30th August, 1866, the day on which the deed first named was recorded. Martin did not see the deed to secure the four notes; it was not recorded till Oct., 1866.

The first of the four notes of Savage (for the advance) was paid, and on the 19th of Oct., 1866, the day preceding the date of filing the deed of trust to secure them, the second and third of these four notes were assigned by Alkire to plaintiffs, who had no notice, except what the deeds and records furnished; and these two notes are the notes upon which the plaintiffs claim judgment and a decree of foreclosure.

Savage also paid off the first of the nine notes, which Alkire had transferred to Martin, and paid some money on the second previous to this suit. Two other notes of the nine were due and unpaid, at the date of the filing of this action.

The court, after a recital of the facts as above stated, ordered the trustee to sell the land described in both deeds of trust, and directed the proceeds, after paying expenses, to be applied, first, to the payment of the nine notes which had been substituted for the original purchase money, and then to the payment of plaintiffs' two notes. A personal judgment against Savage was rendered also in favor of plaintiffs, as well as Martin, for the amounts respectively due them.

The only question here, is as to the propriety of the decree, in giving a priority to the claims of Martin, over the claims of plaintiffs who insist on their rights to have their notes first paid, as being first due.

If this question was one between Martin and Alkire, from whom plaintiffs bought the notes, we suppose no argument or authority would be needed to justify the priority given to Martin in the decree. For, laying aside any consideration of the admissibility of the parol evidence, the transaction itself could lead to no other conclusion, than that Martin and Alkire, in substituting one deed of trust for the other, had no design that the one last received should be of less value than the first. No man in his senses, as we must suppose Martin to have been, would have given up a security upon his own land, for which he had not been paid, and upon which, aside from deeds of trust and notes, he had a lien for the unpaid purchase money, unless he supposed the security received in its place was equally efficacious with the one abandoned. And if the latter proved not to be so, it was simply a gross fraud, or an innocent mistake, from either of which a court of equity would relieve.

The testimony of Martin in regard to his understanding that the deed to secure the four notes was subsequent and subsiduary to the deed to secure the original purchase money, and that Alkire and Savage so represented it, which is ob-

jected to as parol evidence to change or affect a written contract, is really not needed to satisfy a court or jury, that such was the understanding of Martin, and that such was the intent of Alkire. The correspondence of the nine notes given by Savage with the nine notes given by Alkire in all their details, could have originated in no other motive than a belief that the one set of notes would be exchanged for the other, and the security of the one exchanged for the security of the other, without affecting in any way, the value of these notes and securities to Martin. Alkire could have had no other object in view—if he was an honest man or a man of ordinary intelligence—and seems to have entertained no design of imposing on Martin. He, therefore, so represented the matter to Martin, and the proof of these representations is not obnoxious to the imputation of seeking by parol to modify or change the construction of a written instrument; but to show that one of two instruments, was understood by both parties to them to have a priority over the other. If this was not so, it was either a mistake of Alkire's or a fraud, and parol evidence was admissible to show either.

The retention by Alkire of the deed to secure his notes for the profit he had made in his sale to Savage seems to confirm the hypothesis that Alkire had no intention to deceive or defraud Martin. This deed was never put on the records till after Alkire's sale of the two notes to plaintiffs.

The only difficulty in the case arises from this sale of the notes to plaintiffs, who claim to be innocent purchasers, without notice of anything except what appeared on the records. The records showed the deed of Savage to secure the nine notes, and that was all upon the records at the time they purchased. But the day after they purchased the security, the deed to secure the two notes they purchased was filed for record. And this deed was executed on the same day with the deed to secure the nine notes, although the latter was duly recorded immediately after its execution, and the former was held by Alkire in his pocket, evidently with a view to give the deed to Martin a priority in accordance with his representations to Martin.

There is no doubt the plaintiffs, so far as the notes were concerned, were purchasers for value, without any notice of any equitable defense to these notes.   As such they were unquestionably entitled to a personal judgment against the makers.   The notes carried with them the security of the mortgage or deed of trust, which was executed on the same day with the mortgage to secure the original purchase money and had apparently no subjection to it in point of priority. In point of fact, however, this mortgage or deed of trust was intended by all the parties to it, to be subordinate to that deed which was executed to secure the purchase money. Whether it was so intended or not, a court of equity would see to the payment of the purchase money first.   The vendor in receiving a mortgage to secure the purchase money is not understood to lose his original lien, by its merger in the mortgage.   (Moore vs. Pate, 31 Mo., 315.)

The question then is, whether the plaintiffs, in buying these notes, which were secured by a mortgage, are not bound, with or without notice, to accept the security with all its infirmities. Their right to a personal judgment against the makers is indisputable, without regard to the equities between the makers and holders; but when they seek the enforcement of their claim under the mortgage, it is not clear that they occupy any better position than the person from whom they bought.   One who seeks to enforce an equity, must take it subject to prior equities.

Savage had no title when he conveyed to Hatcher, except what he derived from Alkire; and Alkire had no title, except what he derived from Martin.   The purchase money was a lien independent of these transactions.   Therefore, we do not see how Martin lost his priority, although the purchasers from Savage did not appreciate properly the value of their security.   They had full notice of the deed to secure Martin, as it was recorded before they bought.   Their claim to have their security put upon the same footing, with that of Martin, is based on the assumption that the two deeds were contemporaneous, as they undoubtedly were, and that no priority

existed between them. That such priority did exist, so far as agreements could make them, is plain. But apart from all agreements, and considering such as not affecting the plaintiffs, such priority sprang from the very nature of the transaction, which was substantially to secure a vendor's lien which had never been extinguished.

And the only question is, whether the plaintiffs, who bought these notes which carried with them an equitable lien, are to be affected by the character of the security, which the notes drew with them, or whether they have a right to enforce such security without regard to prior equities, assuming that they have no other knowledge than such as the record imparts.

The law governing mercantile paper has no application to this case. The plaintiffs under that law, could not be bound by any equities between the original payee and the maker, so far as these notes are concerned. But the deed of trust or mortgage to secure these notes was made no better or worse by a transfer to the plaintiffs. Martin, it will be observed, had never, during all these transactions, lost his lien for the original purchase money. He took no personal security from his vendee, other than the vendee himself, and no real security except what the law already gave him on his own land. We cannot say that Martin was guilty of such laches as would forfeit his rights in a court of equity. He had no concern with the four notes given by Savage to Alkire, nor with the security Alkire gave. He never was shown that security, nor was it put upon the records. He was informed that such security was given, but that the deed was subordinate to the one given to him. Whether this was so, or not, his lien for the purchase money remained. The transaction between Alkire and Savage concerning the four notes for the advance upon the purchase money, was a distinct and independent transaction in which Martin had no interest, upon the supposition that Alkire did not deceive him as to its character and effect. If Alkire did so deceive him, although he appears not to have done so intentionally, the result would be

that a court of equity would disregard his deed of trust, and allow Martin to fall back upon his original lien, which neither this deed nor Savage's notes had extinguished. Martin accepted Savage's notes in lieu of Alkire's, not as additional or better personal security, but simply as a substitution of one debtor for another; and the deed of trust from Savage was also accepted in lieu of the same deed already given to him by Alkire and supposed to be equally efficacious in protecting his rights as vendor. No new or independent security was taken.

Considering the decree of the Circuit Court, therefore, as substantially an enforcement of the vendor's lien for the purchase money, through the sale ordered to be made by the trustee, we think the court was right in requiring the notes for this purchase money to be paid.

We shall, therefore, affirm the decree; the other judges concur.