GEORGE PARTRIDGE, Appellant, *v.* ANN E. LOGAN, Respondent.

### April 24, 1877.

Where a vendor of real estate, at the time of sale, took notes of the husband of the vendee, and also took a mortgage on the land sold, which he foreclosed, and took possession of the land, claiming title under the foreclosure, in the absence of any agreement that the implied or equitable lien was not waived, and where there is nothing to show a reliance upon such lien, a vendor's lien cannot be maintained, even where, owing to the carelessness or ignorance of the vendor's agents, the security taken is almost worthless.

APPEAL from St. Louis Circuit Court.

*General term affirmed.*

*Hitchcock, Lubke & Player*, for appellant, cited: Wag. Stat. 148, sec. 41; Franz *v.* Dietrick, 49 Mo. 95; Delassus *v.* Poston, 19 Mo. 429; Adams *v.* Buchanan, 49 Mo. 69; Major *v.* Bukley, 51 Mo. 231; Skinner *v.* Purnell, 52 Mo. 67; Armstrong *v.* Ross, 5 C. E. Green, 107; Wasson *v.* Davis, 34 Texas, 159; Johnson *v.* Smith, 43 Mo. 501; 4 Kent's Com. 152, and cases cited in notes; Haugh *v.* Blythe, 20 Ind. 24.

*E. B. Sherzer* and *Leverett Bell*, for respondent, cited: Emison *et al. v.* Whittlesey *et al.*, 55 Mo. 254; Fish *v.* How-

land, 1 Paige, 30 ; Camden v. Vail, 23 Cal. 633, 636 ; Harris v. Harlan, 14 Ind. 439, 440 ; Mattix v. Weand et al., 19 Ind. 151, 152 ; Richards v. Leaming, 27 Ill. 432, 433 ; Durette v. Briggs, 47 Mo. 356, 360 ; Sullivan v. Ferguson, 40 Mo. 79, 90 ; Cool v. Varnam, 37 Ill. 185, 186 ; Higgins v. Peltzer, 49 Mo. 152, 157 ; Bersh v. Corey, 15 N. Y. 505 ; 1 Washb. on Real Prop. 123, 124, sec. 96 ; Thomas v. Mallinckrodt, 43 Mo. 58.

BAKEWELL, J., delivered the opinion of the court.

This was a proceeding in equity to enforce a vendor's lien against real estate, brought to the June term, 1873, of the St. Louis Circuit Court. The cause, by order of court and agreement of parties, was referred to a referee, to be tried before him acting as judge and chancellor, with like effects, in all respects, as if tried before the judge of the Circuit Court in person.

In due time the referee filed his report, accompanied by all the testimony, and his finding of facts, and decision that the property described was chargeable with the lien claimed, which had not been waived, and that plaintiff was entitled to a decree that defendant pay him $992.86, on or before November 2, 1874, with interest and costs, plaintiff thereupon to release the lien ; in default of payment the premises to be sold, on twenty days' notice, by the sheriff ; the remainder, after paying debt, interest, and costs, to go to defendant.

Exceptions to the report, as erroneous in its findings of facts and in its conclusions of law, were overruled ; and a decree, substantially in conformity with the report, was entered for plaintiff. Defendant appealed to general term, where the decree of special term was reversed and the cause remanded, and the cause comes before us on plaintiff's appeal.

We have carefully examined the evidence so far as it is preserved in the record. But as one important deposition, that of defendant, is wholly omitted, and none of the docu-

mentary evidence is preserved, we are not in a position to review the finding of the referee as to facts, which, otherwise, in chancery proceedings, we should not hesitate to do. An agreement seems to have been signed by counsel that the original deeds should make part of the record here; but we do not find them among the papers. The contents and effect of these deeds sufficiently appear, however, in the report of the referee; and it is apparent from the briefs of counsel that as to the contents and manner of execution and acknowledgment of the deeds there is no dispute. So far as we are enabled to judge, the statement of facts embodied in the report of the referee is quite correct.

It appears that, on May 8, 1860, plaintiff was the trustee of Mrs. Elliott, a married woman, and owner, as such trustee, of a lot in the suburbs of St. Louis, which lot was on that date sold to defendant, then the wife of Alexander Logan, she being present and bidding at the sale, for the price of $762.48, one-fourth cash, the balance in equal annual payments at one, two, and three years, the deferred payments to be secured by deed of trust on the property sold. In pursuance of this sale, and a few days thereafter, Partridge, as trustee of Mrs. Elliott, with her written consent, executed and delivered to Mrs. Logan a warranty deed for the lot sold, and received the cash payment, and also the three notes for the deferred payments. These notes were executed by Alexander Logan, husband of defendant, and were secured by deed of trust on the property sold, executed, and delivered by Logan and the defendant, his wife. This deed was effectual to pass any interest of Logan in the property; but, owing to defective acknowledgment, was ineffectual to convey any interest of the defendant. In this whole matter Partridge acted through real-estate agents, and had no personal communication with the defendant or her husband.

None of the notes were paid; and in May, 1863, on the

maturity of the last note, plaintiff caused the property to be advertised for sale under the deed of trust, and purchased the same at the trustee's sale, as trustee of Mrs Elliott. The net proceeds of the sale — $102.25 — were indorsed as a credit on Logan's first-maturing note. Plaintiff then took possession of the lot, which was unimproved and produced no revenue, and remained in possession until May, 1873. During this time he paid the taxes, amounting to $120.15. Logan died in 1871, and his widow, the defendant, afterwards commenced proceedings in ejectment against Partridge, and recovered possession in May, 1873. Partridge then commenced these proceedings to establish an equitable lien.

The referee finds that defendant and her husband left this State in 1862, and never resumed residence here up to the commencement of this suit. This finding is particularly objected to by defendant, as against the evidence. As to that we can say nothing, as the deposition of defendant referred to in the brief of her counsel is not set out in the record. The referee also finds that plaintiff's right of action accrued on May 8, 1863, and within ten years before the commencement of this suit. It is contended by defendant that this action is barred in five years, and that the evidence shows that she was residing in this State during a considerable period, during which the statute ran ; and that it is now a bar. On these questions, in the view which we take of the case, it is not necessary for us to pass.

There was also testimony that this property was again advertised and sold under the deed of trust, on February 13, 1873, by direction of the business agent of plaintiff, and stricken off and sold to plaintiff for $50. No deed was made, no payment tendered, and no credit given on account of this sale. It does not appear why it was made, or what bearing these facts have on the controversy.

Upon these facts the referee states an account showing a balance of indebtedness to plaintiff, by defendant, of

$992.86 on account of this lot; and finds that plaintiff has not at any time waived his vendor's lien; and declares the law to be as follows:

" 1. That the plaintiff is entitled to a vendor's lien upon the premises in question to secure the balance of the purchase-money of the same found to be due, together with interest from the day of sale.

" 2. That, upon the facts as found by the referee, there has been no waiver by plaintiff of his said vendor's lien.

" 3. That, under the deed from plaintiff to defendant, dated the 8th day of May, 1860, she, the defendant, took the fee in the premises thereby conveyed, subject to the life estate of Alexander Logan, her husband, as tenant by the curtesy, and that this life estate passed to plaintiff by virtue of the first sale under the deed of trust and the deed of the trustees in said deed named to him made in pursuance of said sale.

" 4. That the taxes assessed against the premises in question, as found by the referee, were a charge upon the land, and the said plaintiff had a right to pay the same, and, the said plaintiff having derived no rents and profits from said lot, in an account with the defendant upon settlement and discharge of the lien by payment of proceeds of sale of the premises, the defendant is properly chargeable with the amount of the taxes so paid, with interest upon the several sums from the date of such payment."

The existence of this species of lien is well established in England, where it was borrowed from the civil law at a period when the remedy for debt against real estate was very imperfect. It is said that the reason of the rule is that one ought not to retain the estate of another without paying for it; but, if this were an unanswerable argument in favor of the lien, it would apply to support a lien in favor of the vendor of personalty wherever, as with us, real estate can be seized and sold to pay debts. The rule has given rise to much litigation, both in England and in

this country, and the books are full of cases bearing upon it.  Long ago Lord Eldon said, in *Mackreth* v. *Symmons*, 15 Ves. 329 : " It has always struck me, considering this subject, that it would have been better at once to have held that the lien should exist in no case, and the vendor should suffer the consequence of his want of caution, or to have laid down the rule the other way so distinctly that a purchaser might be able to know, without the judgment of a court, in what cases it would, and in what it would not, exist."

In this country the rule has been regarded with much disfavor ; not only for the obvious reasons indicated above, but also as being against the policy of our registration acts, and the recognized policy of facilitating in every way the ready transfer of real estate.   The lien is recognized in the Supreme Court of the United States.   In Maine, Massachusetts, Pennsylvania, North Carolina, South Carolina, and Kansas it is judicially repudiated.   In New Hampshire, Rhode Island, Connecticut, and Delaware its existence is not judicially recognized, and it is spoken of with disfavor.   In Vermont and Virginia the lien, once recognized by the courts, has been abolished by the Legislature.   In most of the other States, and in our own, the doctrine of an implied lien by the vendor for the land sold is recognized ; but the authorities are not concordant as to what constitutes a waiver of the lien.   Perry on Tr., sec. 232, note, and cases cited ; *Perry* v. *Grant*, 10 R. I. 338.

The English rule as to the waiver of the lien is that, where security is taken of a character and value which shows that the credit was exclusively given to that security, that fact is entitled to great weight, though not conclusive in itself, and it still remains a question of intention, to be collected from all the circumstances of the case.

This rule is generally repudiated in America ; and in the courts of this country which recognize the lien it is admitted that the taking of separate independent security is con-

sidered as evidencing an intention to waive the lien, unless there be an express agreement that it shall be maintained.

The taking a note or bond for the purchase-money from the vendee is no waiver of the lien; but, in some States, the taking of a mortgage upon the property sold is held to be a waiver, whilst in others it is not.

The question whether the vendor of land, by taking a mortgage upon the land sold, to secure the payment of the purchase-money, does or does not extinguish his prior equitable lien was very ably argued and carefully considered in Ohio about thirty years ago; and it was determined that the lien is not extinguished, Hitchcock, J., dissenting, and filing a very interesting dissenting opinion. *Boos* v. *Ewing*, 17 Ohio, 521. In this case, whilst recognizing, apparently, that the American rule as adopted, after careful consideration, by Chancellor Walworth in *Fish* v. *Howland*, 1 Paige, 20, and by Chief Justice Marshall in *Brown* v. *Gilman*, 4 Wheat. 290, is to consider the lien waived whenever security is taken on the land for a whole or part of the purchase-money, unless there is an express agreement to the contrary, the majority of the court adopts the other rule, or the English rule, and plainly says that it considers Sir William Grant, Lord Redesdale, and Lord Eldon safer guides.

The views expressed in the dissenting opinion may, however, be fairly considered the American doctrine on this subject; and whilst the doctrine adopted in Ohio has been followed in one or two States only — in Texas (34 Texas, 167) and in Mississippi (44 Miss. 508) — the weight of authority in this country is overwhelmingly in favor of the view that to take a mortgage on the land sold is a waiver of the implied lien.

The opinions of Chief Justice Marshall and Chancellor Walworth have the great weight attached to those honored names, and their doctrine is that of the Supreme Court of the United States and of the New York courts. In Ohio

it was formerly held (*Mayham* v. *Coombs*, 14 Ohio, 428) that the lien is lost when express security is taken on the property sold. In Virginia (*Little* v. *Brown*, 2 Leigh, 353) it was held, before the whole doctrine on the subject was done away with by the Legislature, that an express security on the land merges the implied lien. And the editor of White and Tudor's Leading Cases (vol. 1, p. 365, note) lays this down as the American rule. In Kentucky (*Young* v. *Wood*, 11 B. Mon. 128) it is held that the equitable and legal lien cannot subsist together; and that the equity founded upon the presumption that the vendor looks to the land for his price, where an express lien is given, is merged in and identified with it, and must share its fate. In Oregon (*Pease* v. *Kelly*, 3 Oreg. 419) it is said "a mortgage, which is an open and public lien, is a waiver of the vendor's lien; both cannot subsist at the same time; and this is the established doctrine." And in California it is said that the equitable lien which the vendor of real estate, after an absolute conveyance, has for the unpaid purchase-money is waived by taking a mortgage to secure the same, though the mortgage is void. *Camden* v. *Vail*, 23 Cal. 633. In Indiana it was held (*Haugh* v. *Blythe*, 20 Ind. 24) that the separate mortgage and notes of a married woman, to secure payment of land sold to her, were void and not competent for any purpose, and that they did not, therefore, impair the lien of the vendor. But in *Mattix* v. *Weand*, 19 Ind. 151, it was held that the taking of a mortgage is an abandonment of an equitable lien.

In Texas, on the contrary, the English rule is stated as the true one, and it is there held that the taking a mortgage does not divest the lien, but must be regarded as evidence of intention to rely upon it, and make it notorious by record. "The question," says the court, in *Wasson* v. *Davis*, 34 Texas, 167, "is, not whether the vendor relies upon his lien, but whether he relies for his security upon the particular estate sold. If he intends to rely upon the

estate, the law gives him an equitable lien; and it would not be fair to divest the lien if it shows only a purpose to strengthen it, and not to abandon it. Courts look to the facts of the lien, and not to the form; equity pursues the substance, not the shadow; and it will not disregard the essence of the thing to insist on forms. The English courts of equity have laid down the true rule. Did the vendor intend to trust to the estate as his security? Or did he intend to abandon this, and rely on something else? If he relied on the estate, he retains his lien. If he did not, but took other security on other property, or from some other person, he has lost it."

So far as we have been able to pursue this investigation, however, we find the courts of Ohio, Mississippi, and Texas alone in adopting the English rule in preference to that accepted in those American States in which the doctrine of this lien is admitted at all.

In this State the doctrine that the vendor of real estate retains a lien upon the land for the purchase-money was fully recognized in *Delassus* v. *Poston*, 19 Mo. 425. In that case Judge Gamble, in delivering the opinion of the court, cites with approbation, and adopts, the doctrine of Chancellor Walworth, that the taking of any security, whether on the land sold or otherwise, is a waiver of the lien, unless there be an express agreement that it shall be retained.

The next case in our Reports is *Sullivan* v. *Ferguson*, 40 Mo. 79, where it is held that the taking of collaterals is a waiver of the vendor's lien. This is the only point in the case. But Judge Holmes, in delivering the opinion, approves the English rule that the waiver or non-waiver depends wholly upon the intention of the parties as derived from the entire transaction, and intimates that the taking of collaterals is not conclusive against the lien.

But in *Durette* v. *Briggs*, 47 Mo. 362, Judge Wagner declares it to be the settled law in this State that, where the

vendor takes collaterals, he is presumed to waive the vendor's lien, and if he entertained a different idea he must show it by satisfactory testimony.

In *Adams* v. *Buchanan*, 49 Mo. 64, Judge Bliss, delivering the opinion of the court, accepts the doctrine of *Delassus* v. *Poston*, and the views of Chancellor Walworth and Judge Gamble, and says that the taking of other security shall be considered as evidencing an intention to waive the lien, unless there is shown an express agreement that it shall be maintained. And he says that this is the doctrine adopted by our courts, contrary to the English rule that a person interested in destroying the lien must show that the vendor intended to rest on his collateral security alone.

*Major* v. *Bukley*, 51 Mo. 231, was a case in which the deed conveying the land contained a recital that "$1,680, balance of the purchase-money, is secured to be paid." It was held that this plainly meant that the unpaid purchase-money was secured on the land, and not otherwise; and, being an express agreement that the implied lien should not be waived, it could not be regarded as a waiver of the lien.

In *Emison* v. *Whittlesey*, 55 Mo. 254, decided in 1874, it is said that where security is taken upon the land sold, either for a part or for the whole of the purchase-money, this is a waiver of the implied lien, unless there be an express agreement that the implied lien shall be retained. Judge Napton, who delivers the opinion of the court, cites and adopts the doctrine as laid down in Leading Equity Cases, page 272, and says that it is the result of the American cases. He quotes it in these words: "The implied lien will be sustained whenever the vendor has taken the personal security of the vendee only, by whatever kind of instrument it may be manifested, and, therefore, any bond, note, or covenant, given by the vendee alone, will be considered as intended only to countervail the receipt of the purchase-money contained in the deed, or to show the time and manner in which the payment is to be made, unless

there is an express agreement between the parties to waive the equitable lien ; and, on the other hand, the lien will be considered as waived whenever any distinct and independent security is taken upon the land, either for the whole or a part of the unpaid purchase-money, unless there is an express agreement that the implied lien shall be retained.''

With this we might be satisfied ; and, indeed, this last case necessitates the action of the Circuit Court in general term in reversing the case at bar. The mere fact that plaintiff took security upon the land sold, in the total absence of any evidence of an agreement to the contrary, would, on the doctrine of this case, be fatal to any claim for a vendor's lien.

But in the next volume of Missouri Reports the case of *Linville* v. *Savage*, 58 Mo. 248, is reported ; and there it is determined that, in receiving a mortgage upon the property sold, to secure the purchase-money, the vendor does not lose his equitable lien by its merger in the mortgage ; and it is said that the vendor of real estate taking no personal security from the vendee other than the vendee himself, and no real security except what the law already gives him on his own land, does not lose his lien on the original purchase-money (p. 255).

In view of this latest decision we do not, therefore, feel at liberty to say that Mr. Partridge, in the case before us, in taking or attempting to take security on the land sold, by that very fact alone waived his vendor's lien.

The lien, however, is altogether rested by courts of equity — independently of any express contract — upon the intention of the parties as gathered from the transaction ; and it is clear that whenever, from any circumstances, the court can infer that the vendor did not rely upon his lien — that he never looked to it, or that he at any time abandoned it — the court looks upon it as waived. *Richards* v. *Leaming*, 27 Ill. 432. And, once gone, it is gone forever.

Judge Story, in *Gilman* v. *Brown*, 1 Mason, 207, says

that, on careful examination of all the authorities, he does not find a single case in which it has been held that, if the vendor takes personal collateral security binding on others as well as the vendee, a lien exists on the land itself.

And taking the notes of the husband where the wife is the purchaser is a waiver, unless the presumption is rebutted by satisfactory evidence that it was intended the vendor should retain his lien. 2 Washb. on Real Prop. 91.

If the taking of a mortgage on the land sold is to be held — as the weight of authority is — a waiver of the lien, then it is a matter of indifference whether the mortgage taken be valid or not; the question is wholly one of intention; and the intention of the vendor is as clearly seen, and the maxim *expressum facit cessare tacitum* as fully applies, when a mortgage is taken which turns out to be bad from informality, as if the instrument were unexceptionable. *Hunt* v. *Waterman*, 12 Cal. 302.

In the case at bar every circumstance conspires to show a waiver of the implied and equitable lien. The vendor does not attempt to assert it until nearly ten years after the last note taken for the purchase-money has become due. At the time of the sale he took the notes, not of the vendee, but of her husband. He also took a mortgage upon the land sold. He foreclosed this mortgage, and took possession, claiming title under the foreclosure. There is nothing whatever to show any reliance upon an equitable lien. Under these circumstances, and in the total absence of any express agreement that it was not waived, to maintain a vendor's lien would be against all the current of authority either in this country or this State.

We feel some hesitation in asserting that it must be considered as settled doctrine in this State, in view of the latest case of *Linville* v. *Savage*, that the mere taking of a deed of trust on the land sold is, *prima facie*, a waiver of any equitable lien. But where all the circumstances of the case tend strongly to repel the idea of an intention to rely

upon or retain an equity, the taking of a deed of trust must be allowed its weight as one circumstance against the lien. Of course the mortgage given in the present case was no merger.

This is a simple case of negligence in taking a security supposed to be good, but in fact almost worthless, owing to the carelessness or ignorance of the agents of the vendor; and we do not think a court of equity can relieve.

The judgment of the Circuit Court at general term is affirmed. All the judges concur.