## W. B. WASSON v. J. M. DAVIS.

1. If a holder of a vendor's lien accepts a different security, he thereby waives the lien.

2. A vendor of land has a lien upon the land as long as he shows no purpose of releasing the land and taking other security; but any act of his which shows an intention to release the land divests the lien. But the taking of a mortgage on the land for purchase money is to be regarded as evidence of an intention to rely on the land, and does not divest the lien.

3. The true inquiry is, Did the vendor intend to rely upon the estate as his security, or did he intend to abandon that and rely on something else? If the former, he retains his lien; if the latter, and he took security on other property, or from some other person than his vendee, he has lost it.

4. When a vendor seeks to enforce his lien for the collection of a note which was given in part for the land and in part for other considerations, it is incumbent on him to show how much of the note was given for the land.

5. See the peculiar facts of this case for an instance in which the vendor is held to have lost his lien by his own dealings with his vendee and a sub-vendee, whereby he accepted the individual liability of the latter in lieu of the lien which he had retained to secure the note of the former.

XXXIV—10

ERROR from Harris. Tried below before the Hon. George R. Scott.

The general character and outline of this case are sufficiently indicated in the opinion of the court. As the case, however, is somewhat peculiar in its facts, and as the questions involved are important and of frequent recurrence, it is deemed well to insert the able and interesting briefs of the respective parties at considerable length. From them can easily be gathered the special facts, as well as the deductions drawn from them in this case.

*J. C. Hutcheson*, for the plaintiff in error. — 1. A vendor's lien for unpaid purchase money lies against the vendee, volunteers and purchasers with notice claiming under him, unless clearly relinquished by the vendor—proof being upon the purchasers to show relinquishment. (Hare & Wallace's Leading Cases in Equity, 209; Story, Eq. Jurisprudence, §§ 1217–21; 4 Kent's Com., 152; McLean v. McLean, 10 Pet., 625; 1 Texas R., 326; 14 Id., 318; 19 Id., 497.)

2. It is immaterial that Davis did not have notice at time of purchase; he was notified before payment, and that was sufficient to charge him. (Wigg v. Wigg, 1 Atk., 382; Wormly v. Wormly, 8 Wheaton, 421, 469; Leading Cases in Eq., 197.)

3. This lien is presumed in favor of the vendor against all subsequent vendees; and they must repel the presumption, or rebut the equity. (Gasson v. Green, 1 John. Ch., 308; Fish v. Howland, 1 Paige, 20–30; Warner v. Van Alstyne, 3 Paige, 513; 2 Vol. Story's Eq. Jur., § 1223; 6 John. Ch., 402.)

4. If it remains in doubt, the lien attaches. (2 Vol. Story's Eq. Jur., § 1224; Macreth v. Symmonds, 15 Ver., 342; Sugden on Vendors, ch. 12, 540–560.)

5. The first purchaser holds the land in trust, which passes to all subsequent purchasers with notice. (Briscoe v. Bronaugh, 1 Texas, 330; McBeth v. Symmons, reported in Leading Cases in Eq., 271.)

6. If A. sell land, and cause the note to be made to B., the latter has a lien on the land sold. (Pinchain v. Collard, 13 Texas, 336; 2 Vol. Sugden on Vendors, 882; Collard v. Seamond, 6 B. Monroe, 265.)

7. The transfer by the vendor of the note carries with it the lien. (15 Texas, 554; 19 Texas, 253, 497.)

The facts in this case show that Wasson sold to Williams, and reserved a lien; that Williams sold to Davis, and also reserved a lien; and that before Davis paid his note to Williams, he knew of Wasson's lien. Therefore, under the second proposition and authorities there cited, the lien attached to the land in favor of Wasson in Davis's hands, he being a subsequent purchaser with notice. Was this lien ever surrendered? It is immaterial what evidenced the debt of Wasson—the debt itself operated a lien on the land. While Wasson held the note of Williams, there was a privity of estate between himself and Davis; and when he accommodated Davis by giving Williams his note, and Williams and Davis consenting that Wasson should be substituted in Williams's place, by Davis executing his note for the purchase money to Wasson, this added a privity of person between the parties, without impairing the privity of estate already existing.

This, under the sixth proposition and authorities there cited, would have been the result had there been no previous privity between Wasson and Davis. How much stronger must the rule operate in favor of Wasson?

A stranger comes in with no privity and both are created; Wasson came in with one already existing, and that, they contend, is taken away.

Suppose the title to this land were to fail, and Davis be ejected, would not he have direct recourse on Wasson, through his covenants of warranty? Then, is that privity of estate destroyed? This was a transaction evidently made for the convenience of the parties, and surely Davis cannot complain that the note he gave

Wasson has the same dignity as the one he gave Williams, and for which it is a substitute. It is inequitable and against good conscience that he should have the land of the appellant without paying his money for it. Such proceedings are construed a fraud, and the lien attaches. (Chilton v. Boone, 2 Black., 458; Shelton v. Teffin, 6 Howard, 188.)

If the lien ever existed against Davis in favor of Wasson, and there can be no question that it did, is there any reason for supposing that he intended to abandon his lien? If not, there is nothing in taking Davis's note inconsistent with its continuation. A party should be permitted to take a direct obligation for an indirect one, without losing any of the incidents attached to the indirect form of the contract. And if there was a doubt the lien attaches. The vendee must clearly show the abandonment. (Authorities to third and fourth propositions.)

The evidence of Davis, whom we were forced to call upon the stand, would (taken alone) itself sustain the lien. That part of the statement that the note of Williams to Wasson "was given in part for provisions and cattle," is too indefinite to mean anything, and is contradicted by the witness, Wm. Wasson, and the whole record, which shows the consideration of the note was exclusively the land, out of which defendant would swindle Wasson.

We call the attention of the court specially to the language of the note sued on.

Besides the fact that the statement of Davis is overborne by the whole record, and the evidence of the witness Wasson, there is evidently error in considering his statement about the cattle, because there was no pleading setting out such facts which would notify us of what he expected to prove. (Love & Chappell v. McIntyre, 3 Texas, 10.)

Again, at the time the note now sued on was made, there were two notes outstanding, both of which were charges on the land in

the hands of Davis—Wasson's note for the original purchase money, and Williams's for the intermediate purchase money. If the latter had sued Davis, he had the right to have Wasson made a party to the suit, so that the equities and rights of all the parties might be adjusted simultaneously. (Terrell v. DeWitt, 20 Texas, 256.)

In which case Wasson would have gotten judgment for the original purchase money, and that judgment would not only have protected Davis from paying a double amount of money, but the judgment of Wasson would have been a foreclosure on the land, and the mere fact that this adjustment was made outside of court, by mutual consent of parties, and the debt evidenced by a new and substituted note, did not make the balance due Wasson less a lien on the land.

This view of the case we think conclusive of the matter.

*Moore & Shelley*, and *E. P. Hill*, for the defendant in error.— This suit was brought by the plaintiff in error on a promissory note, executed to him by the defendant in error, for $1964 50, dated June 16, 1867; and he claims that said note is secured by the vendor's lien on a certain tract of land, being one hundred and fifty acres, the homestead of defendant.

It is not pretended that any lien is expressed in the note, or retained in any deed or other writing, or in short, that there was any agreement out of which a lien arises ; but the pretense is, that out of certain transactions disclosed in the evidence, the vendor's lien should be implied in favor of plaintiff.

A jury was waived and the cause submitted to the court, and the simple inquiry for this court is, did the court below render the proper decree upon the facts in evidence ?

The debt was not disputed, and the issue was as to the lien.

It appears that in 1862 Wasson, the plaintiff, sold and conveyed to one Austin M. Williams the tract of land, in considera-

tion of four notes of the latter, due June 1, 1863, 1864, 1865, and 1866, respectively, and said notes are particularly described in the deed, and the vendor's lien retained for their payment.

Afterwards, in April, 1866, Williams sold and conveyed the same land to Davis, the defendant, for part cash in hand and his note due at twelve months for $1875, secured by the vendor's lien retained in the deed.

When Williams sold to Davis, the four notes which he (Williams) had given to Wasson for the land, and for the payment of which a lien was retained in the deed, were all past due; were all in the possession of Williams, and were all delivered by him to Davis. The notes being in the possession of Williams, the presumption of the law was that they were paid and the lien discharged, and there is no pretence that Davis when he purchased had any notice that such was not the fact; on the contrary, when he inquired he was told that there was no lien on the land.

Davis, then, took the land free of any lien, except the lien which his own vendor (Williams) retained to secure his (Davis's) note to himself.

But it appears that though Williams had in possession the four notes which he had executed to Wasson for the land (which notes he delivered up to Davis at the time the latter purchased), yet he had not in fact paid them, but had taken them up, and in place of them had transferred to Wasson a note on Judge Buckley, and for the balance of the amount of the four notes and an amount due by him to Wasson for cattle and provisions, had executed his own note to Wasson.

Now I submit to the court that this transaction was an abandonment by Wasson of his vendor's lien ; he had given up the four notes for the payment of which he had expressly raised the lien ; made a new transaction, mixing up with it an amount due for cattle and provisions, and saying nothing about still retaining his lien for so much of the note as was for the land. He openly aband-

oned his express lien and now asks the court to imply a lien in his favor.

But this is not all. Even after this, Wasson goes to Davis, who had purchased the land without notice of any lien, in the meantime, and urges Davis to take this last note (given in part for cattle and provisions), and use it in paying his (Davis's) note to Williams, saying to Davis that Williams was broke and he was afraid he would lose the amount. And this shows that Wasson himself did not consider that he had any lien; for why be afraid of losing the amount of his note if he had a lien securing it?

Davis did take the note, and use it in paying Williams, and in place of it gave Wasson the note sued on, which is a simple promissory note, expressing nothing about any lien.

It is remarkable that in all these transactions Wasson, if he claimed a lien, did not take some pains to stipulate for it, and I take it that this court will hardly imply a lien in his favor, and make a contract for him which he ought to have made for himself.

But I need not dwell upon this, because there is another feature of the case which is conclusive against the plaintiff.

It appears in evidence that the note by virtue of which Wasson claims the lien, was given in part for cattle and provisions, and having failed to show what portion of the note was given for the land, no decree could be made establishing the lien. This proposition is too plain and palpable to require argument or authority. The vendor's lien can only exist for the purchase money of land, and the plaintiff could not have a decree of foreclosure upon the land for so much of the note as was for cattle and provisions. (Hilliard on Mortgages, 1 Vol., 696.)

But the plaintiff complains that the court erred in admitting evidence of the fact that part of the note was for cattle and provisions, when there was no plea to that effect by defendant. This objection is groundless. No lien was expressed in any way, and the burden of proof was on the plaintiff to show that the note was

given for the land; and in attempting to show this, his own witness stated upon direct examination that part of the note was for cattle and provisions.

Admitting, then, for the sake of argument, that the note by virtue of which Wasson claims the vendor's lien (being the note which he let Davis have, taking the note sued on in place of it) was secured in part by an implied lien on the land, yet as he failed to show how much of the note was for the land, the decree of the court below was right and must be affirmed by this court.

WALKER, J.—This is an action brought by W. B. Wasson against John M. Davis, on a promissory note calling for $1964 50, currency, with ten per cent. interest from date, and expressly stating that it is for the like amount of a note held by Wasson against A. M. Williams, and credited on a note held by Williams against Davis.

Wasson undoubtedly held the vendor's lien to secure the deferred payments on the land sold to Williams.

But it appears that all the deferred payments, except the last, were met; and it would seem from the evidence that the last note was made to include a sum of money which is not ascertained by anything appearing in the record, but which was due from Williams to Wasson; and this note was given by Wason for his individual note to Davis.

The only question for our decision is, did the vendor's lien attach in favor of Wasson to secure the note sued on? .

This lien could not have been enforced by Wasson against Williams to secure that portion of the note which was given for cattle and provisions. But the whole of the Williams note was surrendered to Davis, in consideration of the note sued on, which note was evidently taken by Wasson as a preferable security for his debt.

It is a well settled principle of equity, that he who having a

vendor's lien takes any other security than that which equity gives him upon the land sold, is held thereby to waive the vendor's lien. (See Long on Vendors, Volume 3, 123; Boss v. Eding and others, 17 Ohio R., 500.) The vendor has a lien upon the land sold only so long as he shows no purpose to release the land and take other security. But any act of the vendor which shows an intention to release the land will divest the lien. The taking of a mortgage over the land to secure purchase money does not divest the lien, but must be regarded as evidence of an intention to rely upon it, and render it notorious by record. The question is not whether the vendor relies upon his lien, but whether he relies upon the particular estate sold, for his security. If he intends to rely on the estate, the law gives him the equitable lien, and it would not be fair to divest the lien, if he shows only a purpose to strengthen it and not to abandon it. Courts look to the facts of the lien, not to the form; equity pursues the substance, not the shadow, and will not disregard the essence of things to insist on forms.

The English courts of equity have laid down the true rule. Did the vendor intend to trust to the estate as his security, or did he intend to abandon that and rely on something else? If he relied on the estate he retains his lien; if he did not, but took other security on other property, or from some other person, he has lost it. (See 16 Vesey, 348, 350.)

The evidence in this case makes Davis a *bona fide* purchaser from Williams, without notice of the secret trust; and, indeed, the conduct of Wasson was such as to have misled Davis at the time he purchased from Williams, if, indeed, he had ever intended to set up a vendor's lien upon the land in the hands of Davis.

But it is claimed that there is that privity of contract between Wasson, Williams and Davis, which ought to keep alive the vendor's lien. We think this cannot be maintained.

The vendor's lien could only secure the purchase money, and

Wasson could not have had a decree against the land for that portion of that note which was given for cattle and provisions. (See Hilliard on Mortgages, Vol. 1, 696; 10 B. Mon., 383.) In this case the notes were given for land and merchandise, and the court refused to enforce the lien, it not being shown how much was for land and how much for merchandise. It is argued by the appellant that it was incumbent upon Davis to show that Wasson had waived his vendor's lien, and various authorities are cited. This would doubtless be the case in an action between vendor and vendee, or in any action brought directly to recover the purchase money.

But this is an action brought by Wasson against Davis, on his individual promissory note, which shows upon its very face that it was given in novation of another note. A new debt was substituted for an old one; the old debt was extinguished, and with it the vendor's lien. (See Bouvier's Law Dictionary, title Novation.)

Here was the intervention of a new debtor. Davis became debtor to Wasson instead of Williams; Davis was the expromissor. The whole transaction was that known to the civil law as *ex promissio*. We can find no fault with the judgment of the district court, and the same is therefore affirmed.

Affirmed.