ARCHENHOLD et al. v. BRANCH et al. (No. 7688.)

(Court of Civil Appeals of Texas. Dallas. Feb. 24, 1917. Rehearing Denied March 31, 1917.)

1. VENDOR AND PURCHASER ⬅⟹266(8)—VENDOR'S LIEN—WAIVER—OTHER SECURITY.

The vendor of lands who takes independent security for the purchase price waives his implied lien, unless it appears that he relied thereon.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 735–747.]

2. VENDOR AND PURCHASER ⬅⟹266(8)—VENDOR'S LIEN—WAIVER—RECITAL IN DEED.

A vendor who took other security for the purchase-money notes did not thereby waive his vendor's lien, where he expressly retained such lien in the deed of conveyance.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 735–747.]

3. VENDOR AND PURCHASER ⬅⟹253—VENDOR'S LIEN—RECITALS IN DEED.

Where the recitals in the deed as to consideration were ambiguous as to whether a ven-

dor's lien was retained 'for the purchase-money notes referred to therein, one of which was secured by mortgage on other lands, but the deed in the proper place expressly retained the vendor's lien, that express provision will be given effect, notwithstanding the ambiguity in the recitals.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 637–640.]

4. VENDOR AND PURCHASER ☞266(3)—VENDOR'S LIEN — TRANSFER — QUITCLAIM OF LAND.

Where the holder of two vendor's lien notes transferred one of them by an instrument stating that he quitclaimed to the transferee all his right, title, and interest in the lands, such transfer of the permanent title, while it bars the right to rescind the contract and recover the lands, does not bar the vendor's right, subject to the transferee's right to recover the land, to foreclose the lien of the other note.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 716, 717.]

5. VENDOR AND PURCHASER ☞266(10)—VENDOR'S LIEN—TRANSFER—LIEN OF NOTE NOT TRANSFERRED.

A statement in that transfer that the lienholder had granted, bargained, sold, conveyed, and assigned his lien to the transferee does not necessarily indicate that the lien for the note not transferred was released, and will not be given that construction, but only operates to give the transferee a vendor's lien prior to the lien of the transferor for the note retained by him, since the parties were dealing with the transfer of the lien, not its surrender, and it will not be presumed that they intended to release the security for the second note.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 687, 688.]

6. VENDOR AND PURCHASER ☞257—VENDOR'S LIEN—DURATION OF LIEN.

A vendor's lien created by an express reservation exists as long as the debt it secures, unless it is discharged by some valid agreement between the parties or by payment of the debt.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 654.]

7. VENDOR AND PURCHASER ☞258—VENDOR'S LIEN—SERIES OF NOTES.

When a vendor's lien is expressly reserved against land to secure the payment of a series of notes, the lien secures all of the notes co-ordinately, and none are entitled to priority as between assignees.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 655–657.]

Appeal from District Court, Freestone County; A. M. Blackmon, Judge.

Suit by W. M. Branch and others against S. and M. Archenhold and others to foreclose a vendor's lien. Judgment for the plaintiffs, and defendants appeal. Affirmed.

D. A. Kelley, of Waco, ·and Boyd & Bell, of Teague, for appellants.

RASBURY, J. Appellees instituted this suit upon a note for $534, executed by James W. and Bessie L. Boyd, alleged to be secured by the vendor's contract lien upon 106⅔ acres of land in Freestone county. The suit was against appellants G. W. Laster and wife, who claimed ownership of the land, and appellants S. and M. Archenhold, mortgagees of Laster. Prayer was for foreclosure of the

lien and sale of the land in satisfaction of the principal and interest of the note against appellants. Appellants Laster and wife defended on the ground that they were innocent purchasers of the land without notice of appellees' claim. Appellants the Archenholds alleged that appellees sold the land to one R. C. Vance, from whom the appellant Laster purchased, and that their claim under their mortgage was prior and superior to that asserted by appellees for the reason that they had neither actual nor constructive notice of appellees' lien. Further, that appellees had sold, assigned, and conveyed to one E. W. Kayser, as security for another note executed by said Vance in payment of the land, both their contract lien and their interest in the land, and had also taken other security for the payment of the note sued upon, all of which constituted a waiver or surrender of the lien upon the 106⅔ acres of land, as security for the note sued upon. There was trial without jury, resulting, as relates to appellants, in a foreclosure of the vendor's contract lien against the land in favor of appellees and its sale in satisfaction of the debt, any balance, after such satisfaction, to be applied upon the debt of appellants the Archenholds against the appellant the Lasters. The Boyds, makers of the note, being nonresidents, were cited by publication, and hence no personal judgment was entered against them.

The facts, save in relation to one point, to which we will later advert, are undisputed, and· those essential to a disposition of the issues presented on appeal are in substance these: On May 5, 1910, appellees, being the owners of 106⅔ acres of land in Freestone county, conveyed same to one R. C. Vance, the deed to Vance, omitting formalities, the description of the land conveyed, signatures, and the acknowledgments of the parties, is as follows:

"Know all men by these presents: That James L. Branch, W. N. Branch and C. M. Branch, of the county of El Paso, state of Texas, for and in consideration of the sum of eight hundred fifty three and 30/100 dollars paid and secured to be paid by two certain promissory vendor's lien notes as follows: The sum of one for five hundred thirty-four and No/100 dollars; one for three hundred nineteen and 30/100 cash, to us in hand paid, the receipt of which is hereby acknowledged, and the further sum of note for five hundred thirty-four and No/100 secured by southwest quarter of section twenty-three (23), township eight (8), range forty-one (41) west of sixth P. M., containing one hundred acres more or less, according to government survey located in Sherman county and state of Kansas. Note for three hundred nineteen and 30/100 secured by vendor lien on one hundred and six and ⅔ acres of land located in Freestone county, Texas, as follows: * * * Note for $534.00 to bear interest from date at the rate of 7 per cent. payable annually. Note for $319.30 to bear interest at the rate of 8 per cent. from date until paid, interest payable annually. Have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said R.

C. Vance of the county of El Paso, and state of Texas, all that certain tract, parcel or lot of land situated in Freestone county, Texas, and more particularly described as follows: One hundred six and ⅔ acres. * * * To have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said R. C. Vance, his heirs and assigns forever; and we do hereby bind ourselves, our heirs, executors and administrators, to warrant and forever defend all and singular the said premises unto the said R. C. Vance, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof. But it is expressly agreed and stipulated that the vendor's lien is retained against the above-described property, premises and improvements, until the above-described notes, and all interest thereon, are fully paid according to their face and tenor, effect and reading when this deed shall become absolute. Witness our hands at El Paso, Texas, this 5th day of May, A. D. 1910."

Thereafter, on September 19, 1911, as indicated by the acknowledgment, appellees transferred in writing to one E. W. Kayser the note for $319.30. The transfer, after reciting the execution and date of the note, the rate of interest, that it was in payment of part of the purchase money of the 106⅔ acres of land, and that the vendor's lien was retained to secure payment of same, recites:

"Now, therefore, * * * we, the said J. L., W. M. and C. M. Branch, for a valuable consideration, have assigned, transferred and delivered said note to E. W. Kayser, and in consideration of the premises * * * have bargained, sold and conveyed, assigned and set over to the said E. W. Kayser our lien on said land, and have and do hereby bargain, sell and quitclaim all our right, title, interest, estate, claim and demand, both legal and equitable, in and to said land and every part thereof," etc.

After such transfer and on November 16, 1911, Vance, in consideration of $1,275 cash, conveyed the 106⅔ acres of land to appellants the Lasters. Subsequently on July 8, 1912, some one, the record does not disclose who, paid the note for $319.30 so transferred to Kayser; Kayser at the time executing and acknowledging a formal release of the note, lien, and all right, title, and interest in the property to Vance. Thereafter, on December 18, 1914, appellants the Lasters executed to appellants the Archenholds a mortgage or deed in trust upon the 106⅔ acres to secure payment of an indebtedness for $5,500. The note for $534 described in the deed from appellees to Vance as part of the consideration thereof is dated January 10, 1910, is due January 10, 1914, signed by James W. and Bessie Boyd, secured by an unrecorded mortgage on lands in Kansas, and which was known to be unrecorded by appellees at the time they deeded the land to Vance. Appellants introduced testimony tending to show that appellees intended to rely alone upon the unrecorded mortgage on land in Sherman county, Kan., above mentioned as security for the $534 note, and appellees introduced testimony tending to show that they did not and never did intend to rely thereon. The court found there was no such intention, and that

appellees did not waive any security resulting from the deed to Vance, and the court's finding is amply sustained by the testimony. The several instruments affecting the 106⅔ acres of land were duly recorded in Freestone county in the order of their execution. This suit was commenced July 7, 1915.

[1] Appellants' first contention is that the deed fom appellees to Vance discloses that appellees accepted independent security for the payment of the $534 note, which in law resulted in a waiver of the contract vendor's lien on the 106⅔ acres conveyed. It is the general rule that the vendor of lands who takes independent and distinct security therefor waives the implied lien of the vendor, unless it appears that he relied as well upon such lien. Cresap v. Manor, 63 Tex. 485. The facts in case cited were that the vendee refused to purchase the land if it was to be incumbered with the lien, but offered and the vendor accepted independent and distinct security in payment of the land, and conveyed same in consideration thereof without reciting that he did or did not reserve the lien. Upon such state of facts it was ruled that the legal presumption arose that the implied vendor's lien had been waived, and that it was the duty of the vendor to rebut such presumption by appropriate evidence.

[2, 3] In the instant case, however, the facts are quite dissimilar, for in that portion of the deed where it is proper and usual to make reservations concerning the title to lands the vendor and vendee expressly agree that the vendor's lien is retained to secure payment of both notes. Such provision is the ordinary method of expressly contracting that the lien shall be retained and has that effect. However, appellants depend upon the language used in the premises of the deed or that part which describes and recites the consideration paid for the land to show waiver. Such portion of the deed does use awkward language, as will be seen by examination. But placing upon the language used its ordinary meaning, we think it quite clear that it was the intention of the parties to say, and that the effect of the language is to say, that the total consideration to be paid for the land was $853.30, evidenced by two notes, one for $534, and one for $319.30. It is also true that it is said in the same place that the $534 note is secured by a lien on Kansas lands, and that the note for $319.30 is secured by lien on the land conveyed. The most that can be deduced from such language is that it is probably ambiguous and would warrant the introduction of parol testimony to show the intention of the parties. That was done, and the finding upon the evidence was that there was no intention to waive the lien on the land conveyed and accept in lieu thereof the Kansas lands. However, we conclude that regardless of such finding that the express lien was retained in that part of the deed where it should be retained and had that effect, re-

gardless of the ambiguity in that part describing the character of the consideration.

[4] It is next urged in effect that the recitations of the transfer by appellees to Kayser of the note for $319.30 disclose a surrender, waiver, or loss of the vendor's lien originally retained as security for said $534 note. The effect of said transfer is, in our opinion, threefold. First, it transfers the note. Second, it assigns to Kayser appellees' lien on the land conveyed to Vance. Third, it conveys to Kayser the legal or paramount title to the land. Considering the provisions of the transfer in inverse order, the effect of the conveyance of the paramount title to Kayser was to give Kayser priority in the payment of his note over the one retained by appellees. This results for the reason that appellees had two remedies against Vance, one being to rescind the contract to convey and recover the land, the other to enforce the contract and foreclose the lien expressly retained in the deed and sell the land in satisfaction of his debt. When appellees conveyed the legal or paramount title to the land to Kayser their right to recover the land was lost, but their right to foreclose the contract lien against Vance was unaffected. Loan & Trust Co. v. Beckley, 93 Tex. 267, 54 S. W. 1027. To be sure Kayser could, if it had become necessary in order to protect his rights, have defeated appellees' lien by suit to recover the land, but such condition never arose, since the note held by Kayser was paid and the respective rights of Kayser and appellees under said transfer are not involved here, and cannot be of any controlling importance in this proceeding. Appellants' and appellees' rights depend upon appellees' right to enforce, not the paramount title, but the express vendor's lien.

[5, 6] But it is further urged, conceding that the transfer of the legal or paramount title did not of itself waive the lien, that the language used in transferring the lien did have that effect or did have the effect of transferring all of the lien to Kayser, and was hence a surrender absolute thereof. The language employed in transferring the lien is that appellees "have bargained, sold and conveyed, assigned and set over to the said E. W. Kayser our lien on said land." In connection with the issue thus raised it is said generally that:

"A lien * * * created by an express reservation exists as long as the debt * * * which it secures, unless it be discharged by some valid agreement between the parties * * *" and that when it "is once created by an express valid agreement, the land is not to be disincumbered save by payment of the debt or a contract for the release or discharge of the incumbrance." Wilcox v. National Bank, 93 Tex. 322, 55 S. W. 317.

The note for $534 was not paid. The inquiry then is, Does the language employed in the transfer of the lien, as distinguished from that portion which conveys the legal or paramount title, constitute in law a release or discharge of the lien so as to leave the note for $534 unsecured? Having in mind that the effect of the deed originally was to secure both notes pro tanto, and having in mind as well the transaction between appellees and Kayser, and its purpose, we conclude that the transfer fails to evidence any intention on the part of either to surrender or waive, as between appellees and Vance, or his vendee, the lien as to the $534 note. Appellees and Kayser were not dealing with that subject, but solely with the subject of the note about to be passed to Kayser. Such being true, it is correct to say that they had no intention to deal with such other subject, unless it can be said that what they actually did resulted as matter of law in accomplishing that which they did not intend. This we think is not the result of the language used.

[7] When appellees transferred their lien on the land the most comprehensive meaning of the language so used would be that they passed all the lien they had to secure the note transferred by the same instrument, for it is well settled that when the vendor's lien is reserved expressly against land to secure the payment of a series of notes, such lien secures all of the series co-ordinately, and none of them are entitled to priority as between assignees. Douglass v. Blount, 22 Tex. Civ. App. 493, 55 S. W. 526. Incidentally, there seems to be some uncertainty about the rule as between assignors and assignees. Douglass v. Blount, 93 Tex. 499, 56 S. W. 334. Illuminative of what we are asserting it is said in Christoff v. Chesley, 11 Tex. Civ. App. 122, 32 S. W. 355, that where one parts with a portion of the debt evidencing the purchase price of land and conveys his interest in the land, he does not part with the lien, for the reason that the vendor's lien is a creature of the law, and gives a lien "upon the whole land, for every dollar of the purchase money, and that lien adheres, pro tanto, to every part of the price of the land." It thus cannot be presumed, much less ruled, that the parties intended to and did that which the law presumes they did not do in the absence of express agreement. It is quite clear that the parties were dealing solely as we have said with the matter of transferring the lien, not discharging, releasing, or waiving it; and if it be law, as we conclude it is, that the lien secured both notes co-ordinately, then in the absence of some express declaration evidencing a different intention it must be presumed that the parties had that rule in mind. Such a declaration is not contained in the transfer we are discussing. Not even a remote reference is made to the release, surrender, or waiver of the lien. Such being the case, and the deed from appellees to Vance retaining expressly the vendor's lien, and that lien as matter of law co-ordinately securing both notes, and there being in the transfer no express or implied release of the lien,

but at most only the implication of an intention, arising also at law, to prefer the assigned note in the security, appellants the Archenholds must be held to have taken their subsequent mortgage with notice thereof, and appellants the Lasters to have so purchased the land, and hence in both instances subject thereto.

For the reasons indicated, the judgment is affirmed.