### In re FOSTER.

(District Court, N. D. Texas, San Angelo Division.   December 10, 1923.)

No. 300.

Vendor and purchaser ⊜⟹266(6)—Vendor's lien held waived.

Under the law of Texas, by which a vendor has an equitable lien for unpaid purchase money unless waived, such lien *held* waived by implication, where the vendor accepted the personal note of the purchaser for a part of the purchase money, which he at once discounted at a bank, and the note, after renewals, with other indebtedness of the maker, was paid by an indorser, none of the parties, though having knowledge of the facts, having asserted a lien until after bankruptcy of the purchaser, when it was claimed by the indorser.

In Bankruptcy. In the matter of Thomas Sterling Foster, bankrupt. On review of decision of referee, denying claim of T. F. Foster to lien. Affirmed.

J. A. Thomas, of San Angelo, Tex., for trustee.
Upton & Upton, of San Angelo, Tex., for creditor.

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ATWELL, District Judge. Springer sold to T. S. Foster certain lots. The deed recited $1,250 in cash and the assumption of three existing vendor's lien notes, in the sum of $750. As a matter of fact, Foster only paid $500 in cash, and he gave his personal note to the vendor for the other $750. Neither the deed nor the note showed any reservation of the vendor's lien.

Before the execution of the deed or note, and in the absence of Foster, the vendee, Springer, related to the president of the First State Bank of Sterling City that he was selling his place to Foster for $2,000; that Foster was paying him $500 in cash and assuming vendor's lien notes in the sum of $750, and was giving him his personal note for $750, due 12 months after date, bearing interest at the rate of 10 per cent. per annum, and asked the president of the bank if said note was cashable. Being informed that it was, he agreed to sell to Foster, and Foster paid him $500 in cash and signed the note for $750, which Springer indorsed to the bank and received the proceeds thereon.

When this note became due it was renewed twice without the knowledge of Springer, and thereafter Foster, being indebted to the bank in the sum of $1,752.60, which included the $750 note, made a new note for the entire amount, which was indorsed by his brother, T. F. Foster. About a year later T. S. Foster was adjudged bankrupt upon a voluntary petition, and T. F. Foster was forced to, and did, pay the entire indebtedness to the bank.

At the time the $750 note was negotiated to the bank it had knowledge that it represented part of the purchase money for the lots; at the time T. F. Foster indorsed the $1,752.60 note, he (T. F. Foster) knew that $750 of the amount represented part of the purchase money for the lots. At the time he indorsed the note, T. S. Foster told him he would give him a deed of trust upon the lots to secure him, and later did so. Such deed of trust was not filed for record until the 15th day of December, 1921, although it was given on the 15th day of July, 1921, to secure the payment of a $2,000 note, which included the $1,752.60, made up as above stated.

At the time of the sale by Springer to Foster, neither party mentioned nor discussed whether the $750 note would be secured by a vendor's lien. At the time Springer negotiated the note to the bank, it was not discussed as to whether the note would be secured by a lien on the lots. Springer never received any notice from the bank in regard to said $750 note of any kind or character, either when it was renewed, or when it was merged into the larger note. After it was paid, the president of the bank told him that it had been paid.

When Foster was adjudged a bankrupt, the lots were listed in his assets. After the adjudication, T. F. Foster paid, as aforesaid, the entire indebtedness to the bank, and filed his claim for $750, with interest, asserting an equitable lien on the lots. The trustee objected to the validity of the lien upon the following grounds: (a) That there was a waiver of the lien by the vendor at the time of the execution of the note. (b) That it was waived by the bank, when it renewed the note, and merged it into the larger note, and took the indorsement of

T. F. Foster. Upon these facts, the referee held with the trustee. To this finding the creditor excepted, and regularly brought the proceeding here for review.

From the above facts I conclude that Springer had no thought of selling his land for anything but cash. This is shown by the recital in the deed. It is shown by his visit to the bank before the execution of the papers. His intention seems to have been likewise the judgment of the bank. That he indorsed the Foster note was merely the way to make it negotiable. Such indorsement was not for the purpose of making him liable. He wanted the cash. He secured the cash. There was no thought of the retention of a lien by any of the parties. The lien, therefore, was not expressly retained. Neither was it expressly waived. A waiver is implied from the facts above detailed. Since Justice Bell spoke for the court in Parker County v. Sewell, 24 Tex. 238, announcing a state rule in harmony with the English and national rule, it has been recognized in Texas that a sale of real estate entitled the seller to the money therefor. If he did not get the money, and if he did not expressly retain the lien, the law recognized an equitable lien in his favor. But, as stated by Justice Moore, of the Supreme Court of Texas, in Flanagan v. Cushman, 48 Tex. 244:

"It cannot be questioned that it has been held by this court, from its first organization, that the vendor of land has an equitable lien upon it for the unpaid purchase money, unless such lien has been expressly or impliedly waived or abandoned. * * * It is said to be 'a natural equity that the land shall stand charged with so much of the purchase money as' remains unpaid, without any special agreement to that effect. It must also be now regarded as settled in this state that the transfer or assignment of the debt carries the lien or security for its payment, unless it is shown that such was not the intention of the parties. * * * Though the taking of personal security, * * * if unexplained, is evidence of an implied waiver of the vendor's lien, or, to speak more accurately, where other security than the land is contracted for, equity does not infer that the vendor is entitled to a different and additional security from that stipulated for."

In other words, the vendor may waive his lien by taking personal security for the purchase money, or by taking a chattel mortgage, an assignment of collaterals, or a mortgage on other real estate as security therefor. When a vendor really secures the purchase money, not by a vendor's lien reserved on the land, but by separate and distinct securities, he waives thereby his lien, and the burden of proof is upon him who maintains that the vendor's lien was not waived to establish that fact by appropriate evidence. Brown v. Christie, 35 Tex. 689; Cresap v. Manor, 63 Tex. 485; Wasson v. Davis, 34 Tex. 167; Faver v. Robinson, 46 Tex. 207; Wilcox v. National Bank, 93 Tex. 330, 55 S. W. 317; Dyson v. Dysart (Tex. Civ. App.) 250 S. W. 716. All of the above cases, except the last one, are by the Supreme Court of Texas; the last one is by the Court of Civil Appeals for the Amarillo Division.

The propositions are not at all troublesome. The seller of land shall have his money. In this case he got his money. Neither the seller nor the buyer, nor the bank, nor the indorser, seem to have had any thought

whatever about a lien upon the lots through the original vendor, until after the bankruptcy, or, at any rate, until after the indorser paid the large note to the bank. It is quite evident that there is no lien by implication to which the bank or the indorser could be subrogated.

The judgment of the referee is affirmed.