**OSBURN v. SMART et al.**

No. 12697.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 8, 1932.

Rehearing Denied Nov. 19, 1932.

Second Rehearing Denied Feb. 25, 1933.

W. L. Coley, of Fort Worth, for appellant.

T. W. Dunn and Hiner & Pannill, all of Fort Worth, for appellees.

CONNER, Chief Justice.

Appellant instituted this suit against F. D. Turner and J. O. Smart and Aurelia Smart. The litigation grows out of an exchange of properties between appellant, Osburn, and appellee Smart. It appears that on the 8th day of August, 1929, the parties entered into the following contract:

"The State of Texas, County of Tarrant:

"This agreement between J. O. Smart of Tarrant County, State of Texas, First Party, and S. P. Osburn of Tarrant County, State of Texas, Second Party, is to witness:

"First Party is the owner of the land and notes described as follows, towit: Lot Three in Block Fifteen, also Lot Twelve in Block Thirteen, both in Brooklyn Heights Addition to the City of Fort Worth, Tarrant County, Texas. Two monthly installment notes secured by second vendor's lien against Lot One in Block Four of Brooklyn Heights Addition to Fort Worth, Texas, each dated July 12th, 1929, each payable to the order of J. O. Smart, each signed by F. E. Turner, each bearing interest from date at 8% per annum, payable semi-annually, Note No. 1 in the principal sum of $2,000.00, the first $25.00 monthly installment due September 1st, 1929, Note No. 2 in the principal sum of $1,668.28, the first $25.00 monthly installment due September 1, 1931.

"The agreed value of said land and notes being $12,168.28. Said property is subject to the following liens and incumbrances; on Lot Three, monthly installment note payable to the order of Tarrant County Building & Loan Association, original principal sum of $3,000.00, to have a value of $2,800.00 as of date of closing, if balance due on said note is more than $2,800.00 Smart is to pay the difference to Osburn, if balance is less than $2,800.00 then Osburn is to pay the difference to Smart.

"On Lot Twelve, monthly installment note payable to the order of Railroad Building & Loan Association of Dallas, Texas, original principal sum of $1,700.00, to have a value of $1,640.00, as of date of closing, if balance due on said note is more than $1,640.00 Smart is to pay the difference to Osburn, if balance is less than $1,640.00 then Osburn is to pay the difference to Smart.

"Second party is the owner of the land and premises described as follows, towit:

"(Here follows description of land by metes and bounds.)

"Also all crops, growing and gathered, all tools and implements, all livestock, including hogs, cow, mules and chickens, in fact all chattels now on said land.

"The agreed value of same being $8,178.28. Said property is subject to the following liens and encumbrances: Clear.

"First party hereby sells and agrees to convey to Second Party the land and notes above described as owned by First Party.

"Second Party hereby sells and agrees to convey to First Party the land and chattels above described as owned by Second Party.

"Each of the parties hereto shall assume the encumbrances and liens on the property conveyed to him. The party whose property to be conveyed and equity therein is of least value as fixed hereby shall pay to the other party such difference in cash and notes as follows:

"Osburn paying $450.00 Dollars to Smart. Seller to retain vendor's lien and deed of trust to secure said notes; each party hereto agrees to furnish the other with a complete abstract of the property to be conveyed showing merchantable title to his property which shall be conveyed free and clear of all encumbrances except those herein named, and subject to all restrictions applicable to the plat or addition of which said land is a part.

"Within ten days from the receipt of abstract, the party receiving same shall accept or return abstract with written objections thereto. Failure to comply with this provision shall be construed as an acceptance of the title.

"In the event title is not good and cannot be made good within a reasonable time, the purchase money is to be returned to the party depositing same upon cancellation and return of this contract, but the right to enforce specific performance hereof is retained at the option of either party hereto.

"When title objections have been cured, each party agrees to deliver a good and sufficient warranty deed properly conveying his property to the other and to pay the balance of cash payment, if any, and to execute the notes and deeds of trust, if any herein provided for.

"Should either party fail to consummate this contract, as specified for any reason except title defects, the other party may retain the cash deposit as liquidated damages for said breach after paying the agent therefrom the usual commission, or may enforce specific performance. Taxes for the current year, current rents, insurance and interest, if any, are to be prorated at the date of closing.

"First Party has deposited with Geo. Beggs, Agent, the sum of 2 above described monthly installment vendor's lien notes, re-

ceipt of which is hereby acknowledged, and agrees to pay him a commission of $304.00.

"Second Party has deposited with Geo. Beggs, Agent, the sum of $450.00, receipt of which is hereby acknowledged, and agrees to pay him a commission of $175.00.

"Both Parties hereto have been represented in this transaction by Geo. Beggs as Agent. They agree that said Agent shall represent both of them and each will pay him a commission for his services as follows:

"First Party $304.00 Second Party $175.00.

"No change or addition in this contract shall be made except in writing signed by both parties and their agents, and no representation as to value, condition or otherwise concerning this property shall be binding on either party or their agent or agents unless embodied herein in writing.

"Possession of above described farm to be had at date of closing.

"Witness our hands this 8th day of August, A. D. 1929.

"——————          J. O. Smart
                         Party of First Part.
"——————          S. P. Osburn
                         Party of Second
                              Part."

The plaintiff Osburn, the complaining party, alleged that on August 16, 1929, the contract was consummated by him conveying his property as described in the contract to Aurelia Smart, wife of defendant J. O. Smart; that the Smarts on that day executed and delivered deeds to plaintiff to lot 3, block 15, and lot 12, block 13, mentioned in the contract, and at the same time by written transfer assigned the two second vendor's lien notes mentioned in the contract, representing to plaintiff that said notes were good and would be paid promptly as they became due; that, by reason of the accelerating clauses and the failure to pay the specified installments, plaintiff, on October 16, 1929, elected to and did declare said notes due and payable, and that: "By virtue of the terms of said contract, and by law, plaintiff is entitled to a vendor's lien upon the property conveyed by plaintiff and described in said contract to defendant Aurelia Smart by request of defendant, J. O. Smart, and to a judgment foreclosing said vendor's lien."

Plaintiff further alleged that: "By mutual mistake of the parties to said contract, plaintiff paid to defendant J. O. Smart, Four Hundred and Fifty ($450.00) Dollars in cash, when, according to the terms of the contract, said J. O. Smart should have paid $450.00 to plaintiff, and therefore plaintiff is now entitled to recover from defendants J. O. Smart and Aurelia Smart Nine Hundred ($900) Dollars, together with interest at 6% since to wit, August 8th, 1929." For which he prayed judgment with foreclosure of the vendor's lien.

Smart and wife answered with a general demurrer and a general denial, and specially to the effect that the written contract set out in plaintiff's petition had been duly executed and the properties delivered as therein provided, and that:

"Said contract represents and is the exact proposition and trade except as to values placed on the properties agreed upon by the plaintiff and the defendant J. O. Smart; that the trade and sale of the property set out in said contract and the terms of said contract were carried out by both the plaintiff and the defendant. * * * That the agreement to trade property or properties as above set out was the proposition upon which the minds of the plaintiff and these defendants met and was the identical trade and proposition intended by both the plaintiff and these defendants, and was the identical trade and proposition that was carried out and consummated by the plaintiff and these defendants on the 16th day of August, 1929. * * *

"The said defendants say that they did not at any time indorse said second lien notes and that they did not at any time guarantee the payment of said notes or any part of same to the plaintiff Osburn and that they did not at any time agree either directly or indirectly that the plaintiff should have a lien on the farm conveyed to the defendants by the plaintiff, to secure said two second vendor's lien notes. And the said defendants deny specially that the plaintiff is entitled to a lien upon said farm to secure payment of said notes, either by terms of said contract or by law."

The defendants further specially denied the other claims, aggregating $900, and alleged in substance that the property upon which the notes conveyed to Osburn rested had been examined prior to the trade by Osburn, and was well worth much more than the sums secured by the liens thereon.

The evidence indicates that the case was tried on the theory that by mutual mistake the contract was not as written. It is undisputed that the negotiations which culminated in the execution of the agreement was by a broker, one Borho, acting for both parties; that the parties themselves at no time met or conferred together, but the broker would submit to the respective parties the respective bids, and the contract and conveyances of the properties were signed by the principal parties without having met.

Among other things, it was the contention of the plaintiff that, at the time of the execution of the contract, the negotiating agent, acting for Smart, had declared the notes were good, and that they would be paid, and further that he (Osburn) should have a lien upon the properties conveyed by him to Smart to secure the payments of those notes. This testimony was controverted by the defendants, and the case was submitted to a jury on

two issues, which, together with the answers thereto, are as follows:

"Was the oral agreement made by Borho with Osburn that Osburn should have a lien on the farm to secure the two notes traded Osburn by Smart? Answer: No.

"Was the oral agreement made by Borho with Smart that Osburn should have a lien on the farm to secure the two notes traded Osburn by Smart? Answer: No."

Upon the verdict so rendered, the court entered judgment that the plaintiff take nothing as against J. O. and Aurelia Smart, and that they go without day and recover their costs; and further entered judgment in favor of the plaintiff against F. D. Turner, who had executed the two second vendor's lien notes transferred to the plaintiff, and who had been made a party defendant in the suit, but who failed to answer, for the sum of $4,615.90, principal, interest, and attorney's fees, with interest thereon from the date of the judgment at the rate of 8 per cent. per annum and all costs of suit, etc. The plaintiff, Osburn, excepted to the judgment in favor of the Smarts, and gave due notice of appeal therefrom to this court.

On the submission of this cause, the argument proceeded, in part at least, upon the theory that there was a mutual mistake in the terms of the contract in more than one particular, but the only mistake alleged in the pleadings is that charged by the plaintiff, Osburn, that there was a mistake made in the payment of the $450 to Smart. The concluding clause of the contract is that: "No change or addition in this contract shall be made except in writing signed by both parties and their agents, and no representation as to value, condition or otherwise concerning this property shall be binding on either party or their agents unless embodied herein in writing."

And we find no change of any kind in the contract embodied in writing and attached thereto. We think, therefore, that the rights of the parties are to be determined by the terms of the contract in the light of the evidence otherwise relevant, to which reference will be made. By a reading of the contract it will be observed that each of the parties was to assume the incumbrances and liens on the property conveyed to him. On lots 3 and 12, conveyed by Smart to Osburn, there was an indebtedness of $4,440, which, by the terms of the contract, Osburn assumed. If this be deducted from $12,168.28, the agreed value of Smart's property, it leaves $7,728.28 as the net or actual value that Smart conveyed to Osburn. The agreed value of Osburn's property was $8,178.28. Deducting the $7,728.28 conveyed by Smart leaves $450 as the excess value of Osburn's property. It is clear from the contract as a whole that in the exchange of properties severally conveyed equality of values was intended, and

hence it is apparent on the face of the contract that the $450 the contract recites Osburn paid Smart is a patent mistake; that in truth this $450 was due from Smart to Osburn. This must be held, we think, from the terms of the contract, regardless of the evidence, for the earlier provisions providing equality of values in the exchange of properties control the later recitation of Osburn's payment to Smart—it being a rule in the construction of contracts that, where there is a conflict or ambiguity in the terms of a contract, the earlier provision will prevail over the latter. See 10 Tex. Jur. pp. 310, 311, § 179, and cases cited.

Proceeding then on the theory that Smart on the date of the execution of the contract was due Osburn $450, which he did not pay, to which must be added the $450 which the evidence shows without dispute Osburn in fact paid Smart upon the exchange of deeds, there is a total sum of $900 that Smart is actually indebted to Osburn in this particular.

In treating the subject of equitable liens, it is said in Story's Equitable Jurisprudence (14 Ed.) p. 303, § 1163, that: "One of the most common cases in which a court of equity acts upon the ground of implied trusts in invitum is where a party has received money which he cannot conscientiously withhold from another party. It has been well remarked that the receiving of money which consistently with conscience cannot be retained is in equity sufficient to raise a trust in favor of the party for whom or on whose account it was received. This is the governing principle in all such cases. And therefore whenever any interest arises, the true question is, not whether money has been received by a party of which he could not have compelled the payment, but whether he can now, with a safe conscience, ex aequo et bono retain it. Illustrations of this doctrine are familiar in cases of money paid by accident, or mistake, or fraud. * * *"

In the same volume, page 259, § 1622, it is said that: "But there are liens recognized in equity whose existence is not known or obligation enforced at law, and in respect to which Courts of Equity exercise a very large and salutary jurisdiction. In regard to these liens it may be generally stated that they arise from constructive trusts. They are therefore wholly independent of the possession of the thing to which they are attached as a charge or incumbrance, and they can be enforced only in Courts of Equity. The usual course of enforcing a lien in equity, if not discharged, is by a sale of the property to which it is attached. Of this we have a strong illustration in the well-known doctrine of Courts of Equity, that the vendor of land has a lien on the land for the amount of the purchase-money, not only against the vendee himself, and his heirs and other

privies in estate, but also against all subsequent purchasers having notice that the purchase money remains unpaid. To the extent of the lien the vendee becomes a trustee for the vendor; and his heirs and all other persons claiming under them with such notice are treated as in the same predicament."

In accord with the principles to be gleaned from the quotations made from Story, we conclude that Osburn is entitled to a personal judgment against J. O. Smart for the said $900, together with interest thereon at the rate of 6 per cent. per annum from the 8th day of August, 1929, to secure which Osburn should have the equitable and implied vendor's liens upon the real estate conveyed by him to Aurelia Smart.

By reference to the contract it will be seen that two second vendor's lien notes, executed by F. D. Turner and payable to J. O. Smart, were conveyed by Smart as part of the consideration for Osburn's property, one for $2,000, and the other for $1,668.28, the two notes aggregating $3,668.28. These notes were secured by a second vendor's lien on lot 1 in block 4 of the Brooklyn Heights addition, this being upon a different lot and in a different block from the lots conveyed by Smart to Osburn. The undisputed proof shows that there was a first vendor's lien upon said lot 1 in block 4 to secure some $9,000, and that prior to the institution of this suit the owner of the $9,000 indebtedness in form and manner not questioned sold to a person other than Osburn said lot 1 in block 4 for the amount due upon the principal indebtedness, thus rendering the second vendor's lien notes in question wholly valueless, and plaintiff further seeks to recover in this suit the value as agreed upon in the contract of the said second vendor's lien notes, aggregating $3,668.28, with a foreclosure of a vendor's lien upon the lands conveyed by Osburn to Smart. The undisputed proof shows that the second vendor's lien notes in question were not indorsed by Smart, the transfer being by a written instrument not attached to the notes, and therefore, under our Negotiable Instruments Act, Smart is not personally liable thereon. However, by section 49 of that act (Rev. St. 1925, art. 5934, § 49), it is stated that, where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferor. Moreover, we see no reason why, where the facts or law require it, a purchaser may not be relieved of a personal liability and at the same time consent to a lien upon the property received by him to secure his personal note. It is to be noted also that the contract, after specifying the notes described, including the two second vendor's lien notes, contains the following: "Seller to retain vendor's lien and deed of trust to secure said notes. * * *"

The language is certainly broad enough to include the right in Smart to a vendor's lien upon the real estate he conveyed to Osburn to secure the payment of the notes secured by a lien thereon which Osburn assumed, and likewise broad enough to include the right to Osburn to the vendor's lien upon the property he conveyed to Smart to secure the payment of the two second vendor's lien notes received as part consideration for his conveyance. Osburn, as to his property, was undoubtedly a seller. These two vendor's lien notes were taken as part consideration. That they are worthless and invalid is not questioned by any finding, and, while the oral evidence was to the effect that there was no specific agreement during the negotiations that Osburn should have a lien to secure the payment of these notes, or for a personal judgment against Smart, yet, in view of section 49 of the Negotiable Instruments Act (Rev. St. 1925, art. 5934, § 49) and of the language of the contract, we have concluded that in equity Osburn is entitled, in addition to the $900 item hereinbefore referred to, to the vendor's lien upon the real estate conveyed by him to Aurelia Smart to secure the payment of these two second vendor's lien notes taken by him as part of the consideration for the property. The section of the Negotiable Instruments Act referred to reads as follows: "Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferor. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made."

It is accordingly ordered that the judgment below be reversed and here rendered in favor of appellant, Osburn, in accord with our conclusions as noted, with direction for the issuance of all necessary process for its indorsement.

There is no complaint either in behalf of or against the defendant F. D. Turner or the appellee Mrs. Aurelia Smart, and the judgment as to them is therefore left undisturbed, except the liens hereinabove mentioned established in favor of appellant, Osburn, are enforceable against both J. O. and Aurelia Smart. We wish also to add that our conclusions and decree which shall be entered in accordance therewith are not to be construed so as to prevent J. O. Smart or Aurelia Smart from seeking a subrogation to Osburn's right to the judgment rendered against F. D. Turner for any and all moneys that may be collected by Osburn under the decree enforcing the equitable liens herein granted in his

favor. And it is further provided in this particular that, should it so happen that Osburn at any time has been or shall be enabled to actually collect any sum or sums of money from or under the said judgment against F. D. Turner, such sum or sums as shall be so collected, if any, or received under said judgment, shall operate as a credit pro tanto on the sums hereinabove specified as due Osburn under this decree.

It is further ordered that all costs of this court and in the court below shall be taxed against appellee J. C. Smart.

### On Motion for Rehearing.

In behalf of appellees a vigorous effort for a rehearing has been presented. It is insisted that we erroneously awarded to appellant the $900 and a vendor's lien to secure the payment of the second vendor's lien notes Osburn received in the exchange. In deference to the earnestness and ability of the eminent counsel who now so insists, we will again review these questions. Recurring, therefore, to the contract, we find: (1) The value of appellant's (Osburn's) property, real and personal, unincumbered as fixed by the contract, is $8,178.28; (2) the value of appellee Smart's property, including incumbrances, as fixed by the contract, is $12,168.28.

This property of Smart's consisted of the two notes aggregating $3668.28, which being deducted leaves the value of the two lots conveyed by Smart to Osburn as $8,500. These two lots were incumbered in the aggregate sum of $4,440. Therefore the value of Smart's equity is $4,060.

Therefore the difference between the unincumbered value of Osburn's property and the equity of Smart's property is $4,118.28.

The contract says: "The party whose property, to be conveyed and equity therein, is of the least value as fixed hereby, shall pay to the other party such difference in cash and notes."

Therefore, by the very terms of the contract, Smart was obligated to pay to Osburn $4,118.28 in cash and notes. The notes being for $3,668.28, Smart was obligated by the contract to pay the balance, $450, in cash.

■ Again, the contract provides: "Seller to retain vendor's lien and deed of trust to secure said notes."

There being no other notes involved by the terms of the contract except the two second lien notes, aggregating $3,668.28, which were transferred by Smart to Osburn as part of the purchase price of the Osburn farm, the expression "said notes" necessarily means these two notes. Therefore, by the terms of the contract, a vendor's lien was specifically provided in favor of Osburn and against the land conveyed by Osburn to Smart.

■ The settled law of this state is: Where there is a variance between clauses of a contract, the one which contributes most essentially to the contract is entitled to the most consideration.

■ If there is an irreconcilable conflict between clauses of the contract, by reason of which the meaning is obscured or rendered doubtful, the expression in the clause first appearing will control. 10 Tex. Jurisprudence, p. 311, § 179, and cases there cited.

■ Therefore the expression, "Osburn paying $450.00 to Smart," following the positive provision in the contract, "The party whose property to be conveyed and equity therein, is of least value as fixed hereby, shall pay to the other such difference in cash and notes," being absolutely at variance, and in irreconcilable conflict with the plain terms of the contract, is a self-evident error, and must be discarded. Any other interpretation would entirely destroy the plain terms of the contract considered as a whole, and would permit the establishment of an entirely different contract by parol testimony, without any pleading to base it upon.

An examination of the evidence, which came up in question and answer form, discloses that appellant and appellee never talked with each other about the contract; that neither of them read it; that each of them trusted it entirely to Borho, the real estate agent. Appellant said: "I did not read the contract; I trusted it entirely to Borho; I just relied on what he said; I signed whatever papers Borho showed me and took whatever he handed me. I was sick in bed most of the time and I did not read. I had absolute confidence in the man."

The witness Mrs. Osburn said: "Mr. Borho said Mr. Osburn was due Mr. Smart $450.00 difference, and Mr. Osburn said 'I will give you a check.' He wrote out the check and said 'Widow I am leaving it to Mr. Borho.' "

Appellee Smart said: "I did not read the contract." The witness Borho said: "They both tried to put their property up so that they could get together on the trade; they both agreed that was the value of their property; I put in the contract what they both agreed to, when I finished the negotiations— I reduced it to writing."

It is quite evident that Mr. Borho, representing both parties, made the mistake in writing into the contract the $450 statement and collecting from Osburn $450. It is therefore evident that Smart should repay this $450 and should pay to Osburn $450 that he should have paid at the time of closing the contract, making a total due Osburn of $900, with interest, as stated in the original opinion in this case.

In his motion for rehearing, appellee for the first time raises the question and submits the propositions: First, where seller accepts notes of a third party as part of the consid-

eration for the sale, he thereby waives the lien; second, a vendor's lien does not arise in the case of a sale of real and personal property, for one entire consideration without any distinct price being set on the land.

We have examined the authorities submitted by counsel for appellees under these two propositions as carefully as time will permit, and we find:

First. That these authorities are based upon the theory that the vendor has waived the implied vendor's lien by taking either the property or the responsibility of a third person.

In the case of Parker County v. Sewell, 24 Tex. 238, the court says: "At all events, it is prima facie evidence of a waiver, and the onus is on the vendor to prove, by the most cogent and irresistible circumstances, that it ought not to have that effect."

In the case of Faver v. Robinson, 46 Tex. 207, the court approves the Parker County v. Sewell Case and says: "He [vendor] will be considered to have waived the lien * * * unless it appears that he reposed as well upon the lien as upon such security."

In the case of Cresap v. Manor, 63 Tex. 487, it is said: "[The law] did require, however, some affirmative action on his [seller] part to show that he should repose upon the lien, as well as the additional security, or something that amounted to an understanding between the parties that the lien was to be retained."

In the case of Archenhold v. Branch (Tex. Civ. App.) 193 S. W. 457, 459, the court says: "It is the general rule that the vendor of lands who takes independent and distinct security therefor waives the implied lien of the vendor, unless it appears that he relied as well upon such lien."

In the case of Scharbauer v. Lampasas County (Tex. Civ. App.) 214 S. W. 468, the holding of the Cresap v. Manor Case, supra, is quoted and adopted.

In the case of Dyson v. Dysart (Tex. Civ. App.) 250 S. W. 716, 717, the cases cited above are quoted with approval, and then the court says: "The decision was clearly based on the conclusion that the notes of third parties, indorsed by the purchaser and delivered to the vendor in payment for the land, constituted such independent security as would preclude the assertion of an implied vendor's lien, in the absence of proof of other facts that would show an intention to retain the lien."

Second. Under the second proposition above mentioned, in the case of Wasson v. Davis, 34 Tex. 167, the court says: "The vendor has a lien upon the land sold only so long as he shows no purpose to release the land and take other security. But any act of the vendor which shows an intention to release the land will divest the lien. * * *

The question is not whether the vendor relies upon his lien, but whether he relies upon the particular estate sold, for his security. If he intends to rely on the estate, the law gives him the equitable lien, and it would not be fair to divest the lien, if he shows only a purpose to strengthen it and not to abandon it."

In that case Wasson had given up the notes of the purchaser, one Williams, and had accepted in lieu of those notes the notes of Davis, and his action was brought against Davis, not Williams.

The court, on page 168 of 34 Tex., says: "It is argued by the appellant that it was incumbent upon Davis to show that Wasson had waived his vendor's lien, and various authorities are cited. This would doubtless be the case in an action between vendor and vendee, or in any action brought directly to recover the purchase money."

In that case Davis' note had not only been given in lieu of the Williams' note, but had been given also as part of the purchase price of personal property as well as the real estate.

The other cases cited by appellee upon this point, as well as upon the first proposition, are unquestionably the law. But they are not applicable to the facts in this case as appellees' counsel desires us to construe them. They are, however, applicable when the point quoted above is considered in connection with the language of this contract, for that language clearly shows that appellant, Osburn, did not intend to waive his vendor's lien, the language being "seller to retain vendor's lien * * * to secure said notes." This language pleaded by plaintiff and admitted by the defendant clearly negatives any idea of appellant intending to waive his vendor's lien, but, on the contrary, it affirms his intention to retain such lien.

We believe, however, that our original opinion should be modified to this extent: That the vendor's lien shall attach to the land conveyed by Osburn to Smart only to the extent of said notes aggregating $3,668.28, together with interest and attorneys' fees as therein provided, and the $450, which by the terms of the contract Smart was to pay Osburn, with interest thereon at 6 per cent. from the date of the final contract.

Appellees' motion for rehearing will therefore be overruled, and a judgment will be here entered as follows:

In favor of S. P. Osburn and against J. O. Smart for $900, together with interest thereon since the 16th day of August, 1929, at 6 per cent. per annum; to secure $450 of which the implied vendor's lien upon the land conveyed by Osburn to Mrs. Smart is awarded. Also in favor of S. P. Osburn and against J. O. Smart for $3,668.28, together with interest thereon at 8 per cent. per annum since July

12, 1929, the date of said note, the interest on each of said notes to be calculated semi-annually, and each unpaid amount of interest to bear interest from the time it became due until paid at the rate of 10 per cent. per annum, together with 10 per cent. on the unpaid balance of said notes, as provided in each of them, as attorneys' fees. Also in favor of S. P. Osburn and against J. O. Smart and Aurelia Smart, establishing the vendor's liens hereinabove specified against the lands described, which was conveyed by Osburn to Aurelia Smart, and foreclosing said vendor's lien, and awarding an order of sale of said real estate in the manner provided by law. Also granting to J. O. Smart and Aurelia Smart the right of subrogation as against the defendant Turner, as provided in the original opinion filed in this case. Executions shall issue against J. O. Smart for the payment of the $900 with accumulated interest and costs. And execution also shall issue against J. O. Smart for any balance that may remain due, if any, after the sale of the real estate under the vendor's lien, as herein provided.

Defendant J. O. Smart will pay all costs of the trial court and of this court.

### On Second Motion for Rehearing.

In the motion for rehearing last filed in behalf of appellees, it is urged that we erred, among other things, in rendering a personal judgment against J. O. Smart upon the vendor's lien notes transferred by him to Osburn as a part of the consideration for the Osburn lands. It is true that these notes were not indorsed by Smart, and hence not liable thereon if section 18 of article 5932 of our Negotiable Instruments Act alone be considered. This section reads, so far as now applicable, as follows: "Sec. 18. No person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided."

But section 49 of article 5934 (Rev. St.) reads in part as follows: "Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferor."

It is undisputed that Smart conveyed the notes in question to Osburn for value by a written assignment and Osburn, among other prayers, prayed for general relief, to wit, for all relief to which he was entitled in either law or equity. Hence, construing the two sections together, we concluded that under the evidence Osburn was equitably entitled to the personal judgment complained of.

Other questions presented in the motion now under consideration are, we think, sufficiently disposed of in our former opinions. The present motion, therefore, is also overruled.